FILED

DEC 29 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAL SOEUN,<br><br>    Petitioner,<br><br>    v<br><br>R.A. HOREL, Warden,<br><br>    Respondent. | NO C-08-0195-VRW<br><br>ORDER |

    Petitioner Sal Soeun, a state prisoner incarcerated at the Pelican Bay State Prison in Crescent City, CA, seeks a writ of habeas corpus under 28 USC § 2254. For the reasons set forth below, a writ is DENIED.

I

    After a jury trial in Stanislaus County superior court, petitioner was convicted of conspiracy to commit home invasion robbery, attempted home invasion robbery, first degree burglary, assault with a firearm, shooting at an inhabited dwelling and criminal street gang participation. The jury also found true enhancements for firearm use and criminal street gang promotion.

On September 20, 1999, petitioner was sentenced to a term of twenty-nine years in state prison.

The California Court of Appeal subsequently affirmed petitioner's convictions, but remanded the case for resentencing. Petitioner was subsequently resentenced and then, after another appeal, sentenced for a third time. His final sentence was twenty-two years and two months in state prison.

Petitioner did not file a petition for review in the California Supreme Court. His state habeas petitions were denied. Petitioner subsequently filed a petition for writ of habeas corpus in federal court.

## II

In People v Soeun, F034265 (Fifth Appellate District, filed March 6, 2001), the California Court of Appeal detailed the factual background of this case as follows.[1]

> The prosecution evidence established that Soeun, Sokhean Keo and Sopheap Chheuong were members of the Cambodian Mafia Family criminal street gang. On March 27, 1998, Soeun, Keo, Chheuong and another man attempted a home invasion robbery at a residence on River Pine Street in Modesto where Siphan Nong (Nong) and Sovanna Prak lived with their children, including Jackson Siphan (Jackson). Sometime after 8:00 p.m. on that date, there was a loud noise at the residence's front door as if someone had kicked it.[2] Jackson looked out the window but did not see anyone. He

---

[1] Because the March 6, 2001 opinion by the California Court of Appeal was unpublished, this court will refer to the lodged opinion ("Opinion") throughout this order. The full opinion was lodged by respondent as Lodged Document 1.

[2] [Opinion Footnote 3] A partial shoe print found on the victims' front door was consistent with the pattern on the soles of the shoes Soeun was wearing when he was arrested.

```
 1          looked out the window a second time and this time saw a
            man kneeling four to five feet away from the window.
 2          Prak looked out the window and saw two men.  She then
            yelled for her children to get their father and call
 3          the police.

 4                  Meanwhile, Keo entered the kitchen through
            the window carrying a shotgun.  Keo pointed the shotgun
 5          at Nong, who by then had entered the kitchen armed with
            a handgun.  Keo then pointed the shotgun at the ceiling
 6          and fired it.  Nong fired his handgun several times
            striking Keo once.  Nevertheless, Keo managed to escape
 7          out the window.  At about the same time, someone fired
            two or three shots into the house through the living
 8          room window.  One shot struck a wall above Nong's head.

 9                  Soeun was arrested that day and interviewed
            twice by Detective Allen Brochhini.  During the first
10          interview, Soeun admitted accompanying other men to the
            victims' house.  He also admitted approaching the
11          victims' house by himself, scouting it out, and
            reporting to his cohorts that it was "clear."
12          According to Soeun, he was standing by some bushes when
            he heard gunshots and ran.
13
                    Detective Brocchini testified as an expert
14          that Soeun was actively participating in a street gang
            when he committed the underlying offenses.
15
                    Soeun testified on his own behalf and denied
16          any involvement in the attempted home invasion robbery.
            He also denied being a current member of the Cambodian
17          Mafia Family.  According to Soeun, he told the police
            officers what he thought they wanted to hear so they
18          would let him go.
```

Opinion at 3-4.


                                III

     The Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), codified under 28 USC section 2254, provides "the

exclusive vehicle for a habeas petition by a state prisoner in

custody pursuant to a state court judgment, even when the

[p]etitioner is not challenging his underlying state court

conviction." White v Lambert, 370 F3d 1002, 1009-1010 (9th Cir

1   2004).  Under AEDPA, this court may entertain a petition for
2   habeas relief on behalf of a California state inmate "only on the
3   ground that he is in custody in violation of the Constitution or
4   laws or treaties of the United States."  28 USC section 2254(a).
5       The writ may not be granted unless the state court's
6   adjudication of any claim on the merits: "(1) resulted in a
7   decision that was contrary to, or involved an unreasonable
8   application of, clearly established Federal law, as determined by
9   the Supreme Court of the United States; or (2) resulted in a
10  decision that was based on an unreasonable determination of the
11  facts in light of the evidence presented in the State court
12  proceeding."  28 USC § 2254(d).  Under this deferential standard,
13  federal habeas relief will not be granted "simply because [this]
14  court concludes in its independent judgment that the relevant
15  state-court decision applied clearly established federal law
16  erroneously or incorrectly.  Rather, that application must also
17  be unreasonable."  Williams v Taylor, 529 US 362, 411 (2000).
18      While circuit law may provide persuasive authority in
19  determining whether the state court made an unreasonable
20  application of Supreme Court precedent, the only definitive
21  source of clearly established federal law under 28 USC section
22  2254(d) rests in the holdings (as opposed to the dicta) of the
23  Supreme Court as of the time of the state court decision.  Id at
24  412; Clark v Murphy, 331 F3d 1062, 1069 (9th Cir 2003).
25      When a federal court is presented with a state court
26  decision that is unaccompanied by a rationale for its
27  conclusions, the court has no basis other than the record "for
28  knowing whether the state court correctly identified the

4

governing legal principle or was extending the principle into a new context." Delgado v Lewis, 223 F3d 976, 982 (9th Cir 2000). In such situations, federal courts must conduct an independent review of the record to determine whether the state court decision is objectively unreasonable. Id  While federal courts "'are not required to defer to a state court's decision when that court gives [them] nothing to defer to, [they] must still focus primarily on Supreme Court cases in deciding whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law.'" Greene v Lambert, 288 F3d 1081, 1089 (9th Cir 2002) (quoting Fisher v Roe, 263 F3d 906, 914 (9th Cir 2001)). Furthermore, independent review of the record is not de novo review of the constitutional issue, but rather the only way a federal court can determine whether a silent state court decision is objectively unreasonable. Himes v Thompson, 336 F3d 848, 853 (9th Cir 2003). However, if the state court did not reach the merits of a claim, federal review of the claim is de novo. Nulph v Cook, 333 F.3d 1052, 1057 (9th Cir 2003).

   Even if a petitioner meets the requirements of section 2254(d), habeas relief is warranted only if the constitutional error at issue had a substantial and injurious effect or influence in determining the jury's verdict. Brecht v Abrahamson, 507 US 619, 638 (1993). Under this standard, petitioners "may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, 507 US at 637, citing United States v Lane,

1  474 US 438, 439 (1986).

3                              IV
4          Petitioner seeks federal habeas relief based on three
5  claims: (1) petitioner's confession was obtained by coercion in
6  violation of the Fifth and Fourteenth amendments; (2) petitioner
7  received ineffective assistance of counsel when petitioner's
8  trial counsel failed to file a motion to suppress petitioner's
9  confession; (3) petitioner's conviction of both conspiracy to
10 commit a home invasion robbery and committing a home invasion
11 robbery amounts to violation of the prohibition against double
12 jeopardy.

14                              A
15         Petitioner maintains that his confession was coerced
16 and was therefore inadmissible against him.
17         The confession at issue took place after petitioner's
18 arrest on March 27, 1998.  He was interviewed on March 28, 1998
19 from 4:32 am to 5:02 am, and again from 6:37 am to 7:02 am.  CT
20 467-522.  The interviews were taped and transcribed, and a copy
21 of the transcripts are a part of the record before this court.
22 Petitioner was read his <u>Miranda</u> rights prior to the first
23 interview.  CT at 467.  He acknowledged that he understood his
24 rights and agreed to talk to Detectives Brocchini and Bertalotto.
25 CT at 467-468.  Petitioner's inculpatory statements are generally
26 found at CR 500-522.
27         The Stanislaus County superior court addressed
28 petitioner's claim of undue coercion on habeas review in March

1  2004 and again in August 2005. The court's order of March 22,
2  2004 was written by Judge Girolami, presiding judge in the
3  underlying trial, who noted he was very familiar with the facts
4  before finding as follows:

> [T]here was no illegal arrest as there was clearly probable cause to arrest. Secondly, the delay from the arrest to the statements was not excessive. Thirdly, Defendant was advised of his Miranda rights and clearly waived them. Fourthly, there was no undue pressure or coercion prior to the incriminating statement. Lastly, there was prima facie proof of every element of the crime prior to the introduction of the statements.

Lodged Document 6.

In a subsequent habeas petition, the Stanislaus County superior court again denied petitioner's claim in a reasoned decision, after noting that petitioner had raised the same claim in an earlier habeas petition.

> The Court believes that Judge Girolami's order was appropriate. The Court finds that Defendant was appropriately advised of his Miranda rights, and clearly waived them at the time Defendant was first interrogated (March 28, 1998, 4:32 - 5:02 a.m.). Though Defendant was apparently not again advised of his Miranda rights at the commencement of, or during, the second interrogation (which commenced at 6:36 a.m. on the same day), the second interrogation was sufficiently contemporaneous that a new advisement was not necessary. * * * Further, Defendant never asserted his right to remain silent, or otherwise sought to assert his Miranda rights. The Court further finds that no undue coercion or pressure was exerted upon Defendant at any time during either the first or second interrogation. Thus, the confession was not improperly obtained; it was properly admitted into evidence; counsel's failure to raise the issue of suppression of the confession under the circumstances did not render counsel ineffective.

1 | Lodged Document 10.³

2 |       Petitioner has not shown that the state court's
3 | reasoned opinions are contrary to, or an unreasonable application
4 | of, clearly established United States Supreme Court law.
5 | Petitioner also fails to demonstrate that the state court
6 | opinions relied on an unreasonable determination of the facts.

7 |       Involuntary confessions in state criminal cases are
8 | inadmissible under the Fourteenth Amendment.  <u>Blackburn v</u>
9 | <u>Alabama</u>, 361 US 199, 207 (1960).  The voluntariness of a
10 | confession is evaluated by reviewing both the police conduct in
11 | extracting the statements and the effect of that conduct on the
12 | suspect.  <u>Miller v Fenton</u>, 474 US 104, 116 (1985); <u>Henry v</u>
13 | <u>Kernan</u>, 197 F3d 1021, 1026 (9ᵗʰ Cir. 1999).  Absent police
14 | misconduct causally related to the confession, there is no basis
15 | for concluding that a confession was involuntary in violation of
16 | the Fourteenth Amendment.  <u>Colorado v Connelly</u>, 479 US 157, 167
17 | (1986); <u>Norman v Ducharme</u>, 871 F2d 1483, 1487 (9ᵗʰ Cir 1989).

18 |       To determine the voluntariness of a confession, the
19 | court must consider the effect that the totality of the

---

³ This court notes that while petitioner has not brought a claim on federal habeas that his confession was involuntary because he was not re-advised of his <u>Miranda</u> rights prior to his second interrogation, the state court's decision on this issue was reasonable under clearly established federal law.  There is no per se rule requiring that a suspect be re-advised of his rights when he is re-interrogated after the passage of a certain amount of time.  <u>United States v Rodriguez-Preciado</u>, 399 F3d 1118, 1130 (9ᵗʰ Cir), amended, 416 F3d 939 (9ᵗʰ Cir 2005) (holding that where statements made on the second day of questioning were 16 hours after original <u>Miranda</u> warnings, they were sufficiently close in time that no re-advisement was required).

1  circumstances had upon the will of the defendant.  Schneckloth v
2  Bustamonte, 412 US 218, 226-227 (1973).  "The test is whether,
3  considering the totality of the circumstances, the government
4  obtained the statement by physical or psychological coercion or
5  by improper inducement so that the suspect's will was overborne."
6  United States v Leon Guerrero, 847 F2d 1363, 1366 (9th Cir 1988)
7  (citing Haynes v Washington, 373 US 503, 513-14 (1963)); Pollard
8  v Galaza, 290 F3d 1030, 1035-1036 (9th Cir 2002) (no coercion
9  found in police questioning that violated Miranda because the
10 defendant initiated the conversation by asking "What happened?,"
11 he showed no signs of physical discomfort, and the physical
12 environment was not excessively uncomfortable).

13          Here, petitioner cannot demonstrate that any
14 inculpatory statements were obtained "by physical or
15 psychological coercion or by improper inducement so that the
16 suspect's will was overborne."  Leon Guerrero, 847 F2d at 1366.
17 Having reviewed the transcript, the court finds that there is no
18 indication of coercive police activity during the questioning.
19 See Connelly, 479 US at 167 (holding that "coercive policy
20 activity is a necessary predicate to the finding that a
21 confession is not 'voluntary' within the meaning of the Due
22 Process Clause of the Fourteenth Amendment").  While petitioner
23 argues that he was improperly "tag-teamed" by two officers, there
24 is no precedent stating that an interview by more than one
25 officer is presumptively coercive.  In addition, while petitioner
26 asked for a deal in exchange for telling the truth, the officers
27 reiterated that they could not promise petitioner any kind of
28 deal in exchange for petitioner's statements.  CT at 500.

1  Compare Moore v Czerniak, 574 F3d 1092, 1101 & n 10 (9th Cir
2  2009) (stating that a confession is involuntary when it is
3  extracted as the result of a promise of leniency); but see also
4  United States v Okafor, 285 F3d 842 (846-847) (9th Cir 2002)
5  (holding confession voluntary where custom agent stated to
6  defendant that he would be subject to 10-20 years in prison and
7  it would be to his benefit to cooperate with authorities).

8        Petitioner also maintains that his confession was
9  involuntary because he was denied access to food, water and a
10 bathroom during his interrogation.  To begin with, it is not
11 clear from the transcript that petitioner ever asked for food,
12 water or a bathroom, nor is it clear that he was denied access to
13 food, water or a bathroom during the break in questioning from
14 5:02 am to 6:37 am.  In addition, petitioner was questioned for
15 only about one hour in total (from 4:32 am to 5:02 am and then
16 again from 6:37 am to 7:02 am), which is not a lengthy time to go
17 without food, water or a bathroom break.  Finally, denial of
18 food, water and access to a bathroom during his interrogation,
19 would not render petitioner's confession involuntary under the
20 applicable caselaw.  In Clark v Murphy, for example, the Ninth
21 Circuit held that an interrogation was non-coercive where the
22 suspect was interrogated over a 5-hour period in a 6 by 8 foot
23 room without water or a toilet.  331 F3d 1062, 1073 (9th Cir
24 2003).

25       In sum, petitioner cannot demonstrate that his
26 confession was involuntary.  His claim for relief on this ground
27 must be denied.
28

B

Petitioner maintains that he was denied effective assistance of counsel. Petitioner argues that his attorney's failure to move to suppress his inculpatory statements violated the Sixth Amendment.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i e, that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v Washington, 466 US 668, 687-688 (1984). This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. See id at 687. The relevant inquiry is not what defense counsel could have done, but rather whether the choices defense counsel made were reasonable. See Babbitt v. Calderon, 151 F 3rd 1170, 1173 (9th Cir 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 US at 688; Sanders v Ratelle, 21 F3d 1446, 1456 (9th Cir 1994). It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the Strickland test if petitioner cannot establish incompetence under the first prong. Siripongs v Calderon, 1333 F3d 732, 737 (9th Cir 1998).

Second, the petitioner must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. See Strickland, 466 US at 688.

11

1  The test for prejudice is not outcome-determinative; thus, the
2  petitioner need not show that the deficient conduct more likely
3  than not altered the outcome of the case.  However, a simple
4  showing that the defense was impaired also is not sufficient.
5  See id at 693.  The defendant must show that there is a
6  reasonable probability that, but for counsel's unprofessional
7  errors, the result of the proceeding would have been different.
8  A reasonable probability is a probability sufficient to undermine
9  confidence in the outcome.  See id at 694.

10       Petitioner cannot demonstrate that his counsel's
11  decision not to file a motion to suppress petitioner's
12  inculpatory statements was constitutionally deficient.  As this
13  court has already concluded, petitioner's confession was not
14  coerced, and thus any motion to suppress on this ground by
15  petitioner's trial counsel would have been denied.  Strickland
16  and its progeny do not require that trial counsel make futile
17  motions, and thus, the decision of petitioner's counsel was
18  reasonable under these circumstances.  See Sanders, 21 F3d at
19  1456 (9th Cir 1994).  Furthermore, petitioner cannot demonstrate
20  that he suffered any prejudice due to his counsel's failure to
21  file a motion to suppress.  Given that any suppression motion
22  would have been futile, there is no reasonable probability that,
23  had the motion been brought, the result of the proceeding would
24  have different.  Strickland, 466 US at 693-694.  Accordingly,
25  petitioner's claim must be denied.

26
27                                C
28       In his third claim, petitioner maintains the following:

> On count one and two is a double jeopardy case because I have been sentence[d] under the same crime twice. California law prohibits a person from being charge[d] with the same crime no matter how they are written. Count one is being written as a conspiracy to commit a home invasion robbery, while count two is written as committing a home invasion robbery, which is the exact same charge. So double jeopardy should apply to this case.

Petition at 6.

In considering petitioner's state habeas petition, the Stanislaus County superior court addressed this claim and found as follows:

> Defendant argues that he was subjected to double jeopardy because he was sentenced on both Count I (conspiracy to commit home invasion robbery) and Count II (home invasion robbery). A review of the minute order resentencing the Defendant following his appeal, however, clearly demonstrates that the sentence as to Count I (conspiracy) was stayed pursuant to Penal Code section 654, and that Defendant's sentence does not include time for the conviction on that Count. Accordingly, Defendant's argument is without merit.

Lodged Document 10.

Petitioner has not demonstrated that the state court's reasoned opinion is contrary to, or an unreasonable application of, clearly established United States Supreme Court law. Petitioner also fails to demonstrate that the state court's opinion relied on an unreasonable determination of the facts.

At the outset, the court notes that petitioner has not clearly stated a federal claim. He claims a violation of state double jeopardy law, and under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 USC section 2254(a). Furthermore, the state courts found that

13

petitioner's state claim was without merit, a finding that this court may not overturn absent some violation of federal law. See, e g, <u>Bradshaw v Richey</u>, 546 US 74, 76 (2005) (stating that a state court's interpretation of state law "binds a federal court sitting in habeas corpus").

To the extent petitioner is arguing that the federal guarantee against double jeopardy was violated, his claim must also be denied.[4] The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb". US Const amend V. In <u>Benton v Maryland</u>, 395 US 784 (1969), its protections were held applicable to the states through the Fourteenth Amendment. The guarantee against double jeopardy protects against: (1) a second prosecution for the same offense after acquittal or conviction; and (2) multiple punishments for the same offense. See <u>Witte v. United States</u>, 515 US 389, 395-396 (1995); <u>United States v DiFrancesco</u>, 449 US 117, 129 (1980); <u>North Carolina v Pearce</u>, 395 US 711, 717 (1969); <u>Staatz v Dupnik</u>, 789 F2d 806, 808 (9th Cir 1986). Here, petitioner was not prosecuted for the same offense after acquittal or conviction. And as the decision of the Stanislaus County superior court confirms, because his sentence as to his conviction for conspiracy to commit home invasion robbery was stayed, he has not

---

[4] Respondent maintains that any federal double jeopardy claim has not been properly exhausted. Under AEDPA, however, this court may deny an unexhausted claim on the merits. 28 USC § 2254(b)(2).

14

been subject to multiple punishments for the same offense.[5] Thus, his claim must be denied.

### V

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

Vaughn R Walker
United States District Chief Judge

---

[5] The court emphasizes that it is _not_ holding that conspiracy to commit home invasion robbery and home invasion robbery are actually the same offense. Because petitioner's sentence for the former was stayed, however, he cannot now argue that he is actually being punished for both convictions, and thus, any federal double jeopardy claim is without merit.